UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br>     Plaintiff,<br><br>          v.<br><br>MIDWEST RECOVERY SYSTEMS, LLC,<br>     a limited liability company,<br><br>BRANDON M. TUMBER, individually and as an<br>     officer of Midwest Recovery Systems, LLC,<br><br>KENNY W. CONWAY, individually and as an<br>     officer of Midwest Recovery Systems, LLC, and<br><br>JOSEPH H. SMITH, individually and as an officer<br>     of Midwest Recovery Systems, LLC<br><br>     Defendants. | Case No. <u>4:20-cv-01674</u><br><br>**STIPULATED ORDER FOR<br>PERMANENT INJUNCTION AND<br>MONETARY JUDGMENT** |

Plaintiff, the Federal Trade Commission ("Commission"), filed its Complaint for

Permanent Injunction and Other Equitable Relief ("Complaint"), for a permanent injunction and

other equitable relief in this matter, pursuant to Sections 13(b) and 19 of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, Section 814 of the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692*l*; and Section 621(a) of the Fair Credit

Reporting Act ("FCRA"), 15 U.S.C. § 1681s(a).   The Commission and Defendants stipulate to

the entry of this Order for Permanent Injunction and Monetary Judgment ("Order") to resolve all

matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendants participated in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and violations of the FDCPA, 15 U.S.C. §§ l692-l692p, the FCRA, 15 U.S.C. §§ 1681-1681x, and Regulation V, Subpart E—Duties of Furnishers of Information ("Furnisher Rule"), 12 C.F.R. §§ 1022.40-1022.43, issued pursuant to Section 623(e)(1) of the FCRA, 15 U.S.C. § 1681s-2(e)(1), in the collection of Consumer Debts.

3.      Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.   Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.      Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.      Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

6.      Entry of this Order is in the public interest.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.      "**Defendants**" means the Corporate Defendant and the Individual Defendants, individually, collectively, or in any combination.

      1.      "**Corporate Defendant**" means Midwest Recovery Systems, LLC and its successors and assigns.

2. **"Individual Defendants"** means Brandon M. Tumber, Kenny W. Conway, and Joseph H. Smith, individually, collectively, or in any combination.

B. "**Debt**" means any obligation or alleged obligation to pay money arising out of a transaction, whether or not such obligation has been reduced to judgment.

C. "**Debt Collection Activities**" means any activities of a Debt Collector to collect or attempt to collect, directly or indirectly, a Debt owed or due, or asserted to be owed or due.

D. "**Debt Collector**" means any person who uses any instrumentality of interstate commerce or the mail in any business the principal purpose of which is the collection of any Debts, or who regularly collects or attempts to collect, directly or indirectly, Debts owed or due or asserted to be owed or due another.   The term also includes any creditor who, in the process of collecting its own Debts, uses any name other than its own which would indicate that a third person is collecting or attempting to collect such Debts.   The term also includes any person to the extent such person collects or attempts to collect any Debt that was in default at the time it was obtained by such person.

E. "**Debt Portfolio**" means spreadsheets, databases, tables, lists, or any other compilation of information describing Debts or purported Debts owed by individuals to a business.

F. The definitions set forth in the FCRA, 15 U.S.C. § 1681a, *et seq.*, and 12 C.F.R. §§ 1022.3 and 1022.41 shall apply, including but not limited to:

1. "**Consumer**" means an individual.

2. "**Consumer Reporting Agency**" or "**CRA**" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating Consumer credit

information or other information on Consumers for the purpose of furnishing

consumer reports to third parties, and which uses any means or facility of interstate

commerce for the purpose of preparing or furnishing consumer reports.

3.     "**Direct Dispute**" means a dispute submitted directly to a Furnisher (including a

Furnisher that is a Debt Collector) by a Consumer concerning the accuracy of any

information contained in a consumer report and pertaining to an account or other

relationship that the Furnisher has or had with the Consumer.

4.     "**Furnisher**" means an entity that furnishes information relating to Consumers to

one or more Consumer Reporting Agencies for inclusion in a consumer report.

G.     "**FCRA Qualified Direct Dispute**" means a written Direct Dispute that is submitted by

the Consumer at the address provided by the Furnisher or, if the Furnisher has not

specified an address, is submitted to any business address of the Furnisher and: (1)

includes sufficient information to identify the account or other relationship that is in

dispute; (2) includes the specific information the Consumer is disputing and an

explanation for the basis of the dispute; and (3) includes all supporting documentation or

other information reasonably required by the Furnisher to substantiate the basis of the

dispute.

H.     "**Investigation,**" for purposes of this Order, includes objectively evaluating the

circumstances and considering information, including an assessment of the relevance,

reliability, accuracy, integrity, and completeness of such information, to determine

whether a Consumer owes a Debt in the amount asserted by Defendants while collecting

on Debt.   The information Defendants shall assess in an Investigation, where applicable, shall include but not be limited to:

1.     the information that Defendants received, directly or indirectly, from the credit originator or the creditor to whom the Debt is owed, such as: (a) the Consumer's credit application, (b) the credit contract between the Consumer and the credit originator, (c) documents with the current or former name, address, and telephone phone number of the Consumer, (d) documents with the Consumer's account number, in whole or in part, and account statements, (e) documents with the date and amount of any payments, (f) documents with the date and outstanding balance at charge-off, and (g) Debt Collector's notes;

2.     the information that Defendants received from data aggregators, data brokers, Consumer Reporting Agencies, skip tracers, and other third-parties, such as: (a) documents with the current or former name, address, and telephone number of the Consumer, (b) documents with consumer report information, including credit scores and updates to the information in credit reports, and (c) the scoring of the Debt through the use of a predictive model; and

3.     the information that Defendants created or maintained in collecting on the Debt, such as Debt Collectors' notes; and the information Defendants received from the Consumer denying, disputing, or challenging the claim that the Consumer owes the Debt or the amount of the Debt such as: (a) documents with the Consumer's current or former name, address, and telephone number, (b) receipts or other evidence of payment from the credit originator, the creditor to whom the Debt is

owed, or a Debt Collector, (c) canceled checks, bank account statements. credit

card statements. and other documents evidencing payment, and (d) a consumer

report relevant to the disputed item.

**ORDER**

## I.  PROHIBITION AGAINST FURNISHING CREDIT INFORMATION PRIOR TO COMMUNICATION WITH CONSUMER

IT IS ORDERED that the Defendants, Defendants' officers, agents, employees, and

attorneys, and all other persons in active concert or participation with any of them, who receive

actual notice of this Order, whether acting directly or indirectly, are permanently restrained and

enjoined from furnishing information regarding a Debt to any Consumer Reporting Agency

before communicating with the Consumer about the Debt and providing the Consumer with:

A.   The amount of the Debt;

B.   The name of the creditor to whom the Debt is owed;

C.   A statement that unless the Consumer, within thirty days after receipt of the notice,

   disputes the validity of the Debt, or any portion thereof, the Debt will be assumed

   to be valid by the Debt Collector;

D.   A statement that if the Consumer notifies the Debt Collector in writing within the

   thirty-day period that the Debt, or any portion thereof, is disputed, the Debt

   Collector will obtain verification of the Debt or a copy of a judgment against the

   Consumer and a copy of such verification or judgment will be mailed to the

   Consumer by the Debt Collector;

E.      A statement that, upon the Consumer's written request within the thirty-day period, the Debt Collector will provide the Consumer with the name and address of the original creditor, if different from the current creditor;

F.      Verification of the Debt if the Consumer notifies the Debt Collector in writing within the thirty-day period that the Debt, or any portion thereof, is disputed; and

G.      The name and address of the original creditor, if different from the current creditor, if the Consumer makes a written request within the thirty-day period.

## II.      DELETION OF CONSUMER DEBTS

IT IS FURTHER ORDERED that, for any Debt that Defendants reported or caused to be reported to a CRA prior to entry of this Order, the Corporate Defendant and Individual Defendant Brandon M. Tumber shall, within ten (10) days of entry of this Order, request that each CRA delete such Debt from the consumer's credit reporting file.

## III.   PROHIBITION AGAINST UNLAWFUL DEBT COLLECTION PRACTICES

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all persons or entities in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with any Debt Collection Activities, are permanently restrained and enjoined from:

A.      Using any false, deceptive, or misleading representation or means, including, but not limited to, falsely representing, directly or indirectly, expressly or by implication:

1.      the character, amount, or legal status of any Debt;

2.      that a Consumer is delinquent on a Debt;

3.      that Defendants have the authority to collect any Debt;

4.      that the Consumer has a legal obligation to pay Defendants;

5.      that the law allows them to contact third parties without limitation; or

6.      any other material fact;

B.      Using any unfair or unconscionable means to collect or attempt to collect any

Debt, including collecting Debts that were counterfeit or from unauthorized loans;

C.      Failing to provide Consumers, either in an initial communication or a written

notice sent within five days after the initial communication, with:

1.      the amount of the Debt;

2.      the name of the creditor to whom the Debt is owed;

3.      a statement that unless the Consumer, within thirty days after receipt of the

notice, disputes the validity of the Debt, or any portion thereof, the Debt

will be assumed to be valid by the Debt Collector;

4.      a statement that if the Consumer notifies the Debt Collector in writing

within the thirty-day period that the Debt, or any portion thereof, is

disputed, the Debt Collector will obtain verification of the Debt or a copy

of a judgment against the Consumer and such verification or judgment will

be mailed to the Consumer by the Debt Collector; and

5.      a statement that, upon the Consumer's written request within the thirty-day

period, the Debt Collector will provide the Consumer with the name and

address of the original creditor, if different from the current creditor; and

D.      Violating any provision of the FDCPA, 15 U.S.C. §§ 1692-1692p (a copy of which

is attached hereto as Attachment A), including, but not limited to, Sections

807-809, 15 U.S.C. §§ 1692e-1692g.

## IV.    PROHIBITION AGAINST MISREPRESENTATIONS REGARDING ANY GOOD OR SERVICE

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication:

A.      That a Consumer has a legal obligation to pay Defendants;

B.      Credit information, including by communicating to any person credit information

which is known or which should be known to be false; or

C.      Any other fact material to Consumers concerning any good or service, such as:

the total costs; any material restrictions, limitations, or conditions; or any material

aspect of its performance, efficacy, nature, or central characteristics.

## V.    PROHIBITION AGAINST UNSUBSTANTIATED CLAIMS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all persons or entities in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with Debt Collection Activities, are permanently restrained and enjoined from:

A.      Representing, expressly or by implication, that a Consumer owes a Debt, that

Defendants have authority to collect on a Debt, or the amount of a Debt, when, at

the time of the representation, Defendants do not possess and rely upon competent and reliable evidence that is sufficient to substantiate that the representation is true, including but not limited to instances where:

1.      Consumers have disputed or attempted to dispute the validity or accuracy of the Debt and Defendants have failed to review information substantiating the amount of Debt, or failed to consider the Consumers' disputes, prior to continuing collection; or

2.      Defendants have knowledge or reason to believe that a specific Debt Portfolio contains unreliable data but fail to obtain information substantiating the accuracy of the data prior to collecting; and

B.      Failing, after a Consumer denies, disputes, or challenges the Defendants' claim that the Consumer owes the Debt or owes the Debt in the amount asserted, to:

1.      within thirty (30) days after the denial, dispute, or challenge, or when the Debt is next reported to a Consumer Reporting Agency, if earlier: report the Debt as disputed or request deletion of that item from the Consumer's consumer reporting file by any Consumer Reporting Agency to which the Debt was reported by Defendants; and

2.      promptly after the denial, dispute, or challenge:

(a)      cease collection, and not sell, provide, or transfer the Debt to any Person or entity other than the creditor to whom the Debt is owed; or

(b)  commence and complete, within thirty (30) days after a Consumer

denies, disputes, or challenges Defendants' claim that the Consumer

owes the Debt or that it owes the Debt in the amount asserted, an

Investigation of the denial, dispute, or challenge, ***provided that***

Defendants shall not be required to investigate any denial, dispute,

or challenge more than once unless the Consumer provides to

Defendants or the Defendants otherwise acquire or obtain

information, data, or documentation that was not considered in any

prior Investigation.   Defendants shall notify the Consumer within

five (5) business days if the denial, dispute, or challenge is not

investigated under this proviso.

(i)  If the results of the Investigation show that the Consumer

owes the Debt in the amount  asserted, Defendants shall,

within seven (7) days of reaching their conclusion: (a)

inform the Consumer, either directly or, if the denial,

dispute, or challenge was received solely by notification

from a Consumer Reporting Agency, by informing the

Consumer Reporting Agency, of Defendants' conclusion,

and provide the basis for it; and (b) unless the denial,

dispute, or challenge was received solely by notification

from a Consumer Reporting Agency, provide verification of

the Debt to the Consumer; after which they may continue

Page  11 of 30

collection.   If the Consumer continues to dispute the Debt, nothing in this order supersedes the requirement of § 623(a)(3) of the FCRA, 15 U.S.C. § 1681s-2(a)(3), that Defendants convey the dispute when furnishing information on the Debt to any Consumer Reporting Agency.

(ii)    If the results of the Investigation show that the Consumer does not owe the Debt or the Debt cannot be verified, Defendants shall, within seven (7) days of reaching their conclusion: (a) inform the Consumer, either directly or, if the denial, dispute, or challenge was received solely by notification from a Consumer Reporting Agency, by informing the Consumer Reporting Agency, of Defendants' conclusion and the basis for it; (b) request that each Consumer Reporting Agency to which the Debt has been reported delete the Debt from the Consumer's consumer reporting file; (c) cease collection; and (d) not sell, provide, or transfer the Debt to any Person or entity other than the creditor to whom the Debt is allegedly owed.

(iii)   If the results of the Investigation show that the Consumer does owe the Debt but not in the amount that Defendants asserted, Defendants shall, within seven (7) days of reaching their conclusion: (a) inform the Consumer, either directly or,

if the denial, dispute, or challenge was received solely by notification from a Consumer Reporting Agency, by informing the Consumer Reporting Agency, of Defendants' conclusion and the basis for it; and (b) provide to each Consumer Reporting Agency to which the Debt has been reported any correction to the reported information that is necessary to make the information provided by Defendants accurate, after which they may continue collection.

**Provided that**, if the Consumer initiates contact with Defendants by any means, Defendants may respond to the Consumer prior to the completion of the Investigation.

**Provided further that**, nothing in this Section affects Defendants' obligation to comply with all applicable provisions of the FDCPA and the FCRA.

**Provided further that**, nothing in this Section prohibits Defendants from requiring Consumers who deny, dispute, or challenge a Debt on the grounds of fraud or identity theft to do so in writing, so long as Defendants clearly and conspicuously disclose these requirements to Consumers. Once Defendant receives an identity theft report, the requirements of § 623(a)(6)(B) of the FCRA, 15 U.S.C. § 1681s-2(a)(6)(B), apply.

## VI.    PROHIBITION ON DISCLOSURE OF INACCURATE CONSUMER INFORMATION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with

promoting or offering for sale any good or service, are permanently restrained and enjoined from furnishing information regarding a Consumer to any Consumer Reporting Agency, notwithstanding any alternative compliance methods that may be generally available under Section 623(a)(1)(C) of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(a)(1)(C), while knowing or having reason to believe that the information is inaccurate.

## VII.    PROHIBITION ON VIOLATIONS OF FURNISHER RULE

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are hereby permanently restrained and enjoined from:

A.    Failing to comply with 12 C.F.R. § 1022.42, a copy of which is attached as Attachment B, including by failing to:

1.    Establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to Consumers that it furnishes to CRAs that are appropriate to the nature, size, complexity, and scope of Defendant's activities;

2.    Consider the guidelines set forth in Appendix E to 12 C.F.R. Part 1022, a copy of which is attached as Attachment C, in developing the policies and procedures, and incorporate those guidelines that are appropriate; and

3.    Periodically review the written policies and procedures and update them as necessary to ensure their continued effectiveness;

B.     Failing to:

1.     Establish and implement reasonable written policies and procedures regarding reasonable investigations of FCRA Qualified Direct Disputes;

2.     In developing the policies and procedures concerning FCRA Qualified Direct Disputes, incorporate reasonable provisions related to: (a) training employees whose duties include processing, responding to, or investigating Direct Disputes, including training on the requirements of the FCRA and related regulations; (b) retaining documents related to FCRA Qualified Direct Disputes for a reasonable period of time to allow for effective training and auditing; (c) requiring employees to document actions taken in processing, responding to, or investigating FCRA Qualified Direct Disputes, to allow for effective training and auditing; and (d) establishing an auditing program and schedule that is reasonably designed to promote compliance with the requirements of the FCRA and related regulations; and

3.     Periodically review the written policies and procedures regarding the conduct of reasonable investigations of FCRA Qualified Direct Disputes and update them as necessary to ensure their continued effectiveness;

C.     Failing to comply with 12 C.F.R. § 1022.43, a copy of which is attached as Attachment D, including by, upon receiving an FCRA Qualified Direct Dispute, failing to:

1.     Conduct a reasonable investigation with respect to the disputed information;

2.      Review all relevant information provided by the Consumer with the dispute notice; and

3.      Complete its investigation of the dispute and report the results of the investigation to the Consumer before the expiration of the period prescribed by Section 611(a)(1) of the Fair Credit Reporting Act, 15 U.S.C 1681i(a)(1), a copy of which is attached as Attachment E.

## VIII.  MONETARY JUDGMENT FOR EQUITABLE MONETARY RELIEF

IT IS FURTHER ORDERED that:

A.      Judgment in the amount of Twenty-Four Million Three Hundred Thousand Dollars ($24,300,000) is entered in favor of the Commission against Defendants, jointly and severally, as equitable monetary relief.

B.      Individual Defendants are ordered to assign to the Commission all right, title, and interest in any claim or right they may have to receive payments pursuant to their respective Member Separation and Asset Purchase Payout Agreements with Midwest Recovery Systems, LLC, dated on or about August 26, 2019 in the case of Defendants Kenny W. Conway and Joseph H. Smith, and dated on or about August 30, 2019 in the case of Defendant Brandon M. Tumber, including any amendments, replacements, or substitute agreements.   Individual Defendants shall cooperate fully in such assignment and shall promptly execute all documents and take all actions necessary or appropriate to effect the assignment of any claim or right they may have to receive such payments.   Only the amount of any funds actually received by the Commission pursuant to such assignment will be applied

to the unsuspended judgment amount specified in Subsection A above.   Upon

such assignments, the remainder of the judgment is suspended as to Individual

Defendants Kenny W. Conway and Joseph H. Smith, subject to the Subsections

below.

C.     Individual Defendant Brandon M. Tumber and the Corporate Defendant are

ordered to pay to the Commission Fifty-Six Thousand, Seven Hundred Forty-Eight

Dollars ($56,748).   Such payment must be made within forty-five (45) days of

entry of this Order by electronic fund transfer in accordance with instructions

previously provided by a representative of the Commission.

D.     Individual Defendant Brandon M. Tumber is ordered, within twenty-one (21) days

of entry of this Order, to sell or divest his ownership interest in Consumer

Adjustment Company, Inc., also d/b/a CACi, and shall transfer to the Commission

all funds from the proceeds of such sale or divestiture within thirty (30) days of

entry of this Order.   The sale or divestiture shall not be to any member of

Individual Defendant Brandon M. Tumber's immediate family, and he shall not

otherwise materially benefit from such sale or divestiture.

E.     In partial satisfaction of the judgment, Defendants shall direct U.S. Bank to

transfer to the Commission, within ten (10) business days of receipt of a copy of

this Order, all funds, if any, in all accounts held in the name of, on behalf of, or for

the benefit of, the Corporate Defendant, including, but not limited to account

number xxxxxxxx4997 in the name of Midwest Recovery Systems LLC.

F.    Upon the completion of the assignments, payments, and transfers as set forth in Subsections B-E above, the remainder of the judgment is suspended as to the Corporate Defendant and Individual Defendant Brandon M. Tumber, subject to the Subsections below.

G.    The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn financial statements and related documents (collectively, "financial representations") submitted to the Commission, namely:

1.    the Financial Statement of Individual Defendant Brandon M. Tumber signed on July 26, 2020, including the attachments;

2.    the Financial Statement of Individual Defendant Brandon M. Tumber signed on September 11, 2020, including the attachments;

3.    the Financial Statement of Corporate Defendant Midwest Recovery Systems, LLC signed by Brandon M. Tumber, President, on July 20, including the attachments;

4.    the Financial Statement of Corporate Defendant Midwest Recovery Systems, LLC signed by Brandon M. Tumber, President, on September 10, 2020, including the attachments;

5.    the Financial Statement of Defendant Kenny W. Conway signed on July 30, 2020, including the attachments;

6.    the Financial Statement of Defendant Joseph H. Smith signed on July 27, 2020, including the attachments;

7.      the letter from John H. Bedard, Jr., counsel for Defendants Midwest

Recovery Systems, LLC and Brandon M. Tumber, to Commission counsel

Daniel Dwyer dated July 27, 2020;

8.      the letter from John H. Bedard, Jr., counsel for Defendants Midwest

Recovery Systems, LLC and Brandon M. Tumber, to Commission counsel

Daniel Dwyer dated September 21; and

9.      the Member Separation and Asset Purchase Payout Agreement of

Defendant Joseph H. Smith, submitted to Commission counsel Daniel

Dwyer on September 4, 2020.

H.      The suspension of the judgment will be lifted as to any Defendant if, upon motion

by the Commission, the Court finds that Defendant failed to disclose any material

asset, materially misstated the value of any asset, or made any other material

misstatement or omission in the financial representations identified above.

I.      If the suspension of the judgment is lifted, the judgment becomes immediately due

as to that Defendant in the amount specified in Subsection A above (which the

parties stipulate only for purposes of this Section represents the consumer injury

alleged in the Complaint), less any payment previously made pursuant to this

Section, plus interest computed from the date of entry of this Order.

## IX.    ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.    Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.    The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.    The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order is intended to have collateral estoppel effect for such purposes.

D.    Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

E.    All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.   If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies)

as it determines to be reasonably related to Defendants' practices alleged in the

Complaint.   Any money not used for such equitable relief is to be deposited to the

U.S. Treasury as disgorgement.   Defendants have no right to challenge any

actions the Commission or its representatives may take pursuant to this Subsection.

## X.    CUSTOMER INFORMATION

IT IS FURTHER ORDERED that the Corporate Defendant, its officers, agents,

employees, and attorneys, and all persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, and the Individual

Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from

directly or indirectly failing to provide sufficient customer information to enable the Commission

to efficiently administer consumer redress.   If a representative of the Commission requests in

writing any information related to redress, Defendants must provide it, in the form prescribed by

the Commission, within 14 days.

Provided, however, that customer information need not be disposed of, and may be

disclosed, to the extent requested by a government agency or required by law, regulation, or court

order.

## XI.    COOPERATION

IT IS FURTHER ORDERED that Defendants must fully cooperate with representatives of

the Commission in this case and in any investigation related to or associated with the transactions

or the occurrences that are the subject of the Complaint.   Defendants must provide truthful and

complete information, evidence, and testimony.   Individual Defendants must appear and

Corporate Defendant must cause Corporate Defendant's officers, employees, representatives, or

agents to appear for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon 5 days written notice, or other reasonable notice, at such places and times as a Commission representative may designate, without the service of a subpoena.

## XII.    ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A.    Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.    For 5 years after entry of this Order, each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and each Corporate Defendant, must deliver a copy of this Order to:   (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for Debt Collection Activities and furnishing information to Consumer Reporting Agencies and all agents and representatives who participate in Debt Collection Activities and furnishing information to Consumer Reporting Agencies; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.   Delivery must occur within 7 days of entry of this Order for current personnel.   For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this

Order, that Defendant must obtain, within 30 days, a signed and dated

acknowledgment of receipt of this Order.

### XIII.    COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the

Commission:

A.      One year after entry of this Order, each Defendant must submit a compliance

report, sworn under penalty of perjury:

1.      Each Defendant must:   (a) identify the primary physical, postal, and email

address and telephone number, as designated points of contact, which

representatives of the Commission may use to communicate with

Defendant; (b) identify all of that Defendant's businesses by all of their

names, telephone numbers, and physical, postal, email, and Internet

addresses; (c) describe the activities of each business, including the goods

and services offered, the means of advertising, marketing, and sales, and

the involvement of any other Defendant (which Individual Defendants must

describe if they know or should know due to their own involvement);

(d) describe in detail whether and how that Defendant is in compliance

with each Section of this Order; and (e) provide a copy of each Order

Acknowledgment obtained pursuant to this Order, unless previously

submitted to the Commission.

2.      Additionally, each Individual Defendant must:   (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.      For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Each Defendant must report any change in:   (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that any Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:   creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, each Individual Defendant must report any change in:   (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any

entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:   "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC   20580. The subject line must begin:   Federal Trade Commission v. Midwest Recovery LLC.

## XIV.   RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years.   Specifically, Corporate Defendant, in connection with Debt Collection Activities, and each Individual Defendant for any

business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.      accounting records showing the revenues from all goods or services sold;

B.      personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:   name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.      records of all Consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response; and

D.      all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission.

## XV.    COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order and any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must:   submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.   The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69, provided that Defendants, after attempting to resolve a dispute without court action and for good

cause shown, may file a motion with this Court seeking an order for one or more of the protections set forth in Rule 26(c).

B.      For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant.   Defendants must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.   The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives as Consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.   Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any Consumer Reporting Agency must furnish consumer reports concerning Individual Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XVI.    RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this** _23rd_ **day of** _____December_____ **, 2020.**

STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:**

**FEDERAL TRADE COMMISSION**

/s/ Daniel Dwyer
Daniel Dwyer, Attorney #286701(CA)
Christopher Leach, Attorney
Katherine White, Attorney
Federal Trade Commission
Washington, DC 20580
202-326-2957 (Dwyer)
202-326-2394 (Leach)
202-326-2878 (White)
202-326-3768 (fax)
ddwyer@ftc.gov; cleach@ftc.gov; kwhite@ftc.gov

**FOR DEFENDANTS MIDWEST RECOVERY SYSTEMS LLC AND BRANDON M. TUMBER:**

/s/ Brett B. Caban                                    Date:   12/22/2020
Brett B. Caban          Mo. Bar No. 59022
AEGIS Law
601 South Lindbergh Blvd., Second Floor
St. Louis, Missouri 63131
314-454-9100
bcaban@aegislaw.com

                                                      Date:   12/22/2020
John H. Bedard, Jr.   GA Bar No. 043473
Bedard Law Group, P.C.
4855 River Green Pkwy #310
Duluth, GA 30096
678-253-1871
jbedard@bedardlawgroup.com

COUNSEL for Defendants Midwest Recovery Systems, LLC and Brandon M. Tumber

**DEFENDANTS:**

_____     Date: ____12/22/2020____
BRANDON M. TUMBER, individually and
as an officer of Midwest Recovery Systems, LLC


_____     Date: _____
KENNY W. CONWAY, individually and
as an officer of Midwest Recovery Systems, LLC


_____     Date: _____
JOSEPH H. SMITH, individually and
as an officer of Midwest Recovery Systems, LLC

Page  30 of 30

**DEFENDANTS:**

Date: _____

BRANDON M. TUMBER, individually and
as an officer of Midwest Recovery Systems, LLC

Date: 12/21/2020

KENNY W. CONWAY, individually and
as an officer of Midwest Recovery Systems, LLC

Date: _____

JOSEPH H. SMITH, individually and
as an officer of Midwest Recovery Systems, LLC

**DEFENDANTS:**

_____     Date: _____

BRANDON M. TUMBER, individually and
as an officer of Midwest Recovery Systems, LLC

_____     Date: _____

KENNY W. CONWAY, individually and
as an officer of Midwest Recovery Systems, LLC

_____     Date: 12/21/20

JOSEPH H. SMITH, individually and
as an officer of Midwest Recovery Systems, LLC

Page 30 of 30

**ATTACHMENT A**

(Pub. L. 90–321, title VII, §707, as added Pub. L. 94–239, §7, Mar. 23, 1976, 90 Stat. 255; amended Pub. L. 96–221, title VI, §610(c), Mar. 31, 1980, 94 Stat. 174; Pub. L. 111–203, title X, §1085(1), July 21, 2010, 124 Stat. 2083.)

### Amendments

2010—Pub. L. 111–203 substituted ''Bureau'' for ''Board'' wherever appearing.

1980—Pub. L. 96–221 substituted ''Each year'' for ''Not later than February 1 of each year after 1976''.

### Effective Date of 2010 Amendment

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

### Effective Date of 1980 Amendment

Amendment by Pub. L. 96–221 effective on expiration of two years and six months after Mar. 31, 1980, with all regulations, forms, and clauses required to be prescribed to be promulgated at least one year prior to such effective date, and allowing any creditor to comply with any amendments, in accordance with the regulations, forms, and clauses prescribed by the Board prior to such effective date, see section 625 of Pub. L. 96–221, set out as a note under section 1602 of this title.

### Effective Date

Section effective Mar. 23, 1976, see section 708 of Pub. L. 90–321, set out as a note under section 1691 of this title.

## SUBCHAPTER V—DEBT COLLECTION PRACTICES

### §1692. Congressional findings and declaration of purpose

**(a) Abusive practices**

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

**(b) Inadequacy of laws**

Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

**(c) Available non-abusive collection methods**

Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

**(d) Interstate commerce**

Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

**(e) Purposes**

It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

(Pub. L. 90–321, title VIII, §802, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 874.)

### Effective Date

Pub. L. 90–321, title VIII, §819, formerly §818, as added by Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 883, §818; renumbered §819, Pub. L. 109–351, title VIII, §801(a)(1), Oct. 13, 2006, 120 Stat. 2004, provided that: ''This title [enacting this subchapter] takes effect upon the expiration of six months after the date of its enactment [Sept. 20, 1977], but section 809 [section 1692g of this title] shall apply only with respect to debts for which the initial attempt to collect occurs after such effective date.''

### Short Title

This subchapter known as the ''Fair Debt Collection Practices Act'', see Short Title note set out under section 1601 of this title.

### §1692a. Definitions

As used in this subchapter—

(1) The term ''Bureau'' means the Bureau of Consumer Financial Protection.

(2) The term ''communication'' means the conveying of information regarding a debt directly or indirectly to any person through any medium.

(3) The term ''consumer'' means any natural person obligated or allegedly obligated to pay any debt.

(4) The term ''creditor'' means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

(5) The term ''debt'' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

(6) The term ''debt collector'' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated

by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

(7) The term "location information" means a consumer's place of abode and his telephone number at such place, or his place of employment.

(8) The term "State" means any State, territory, or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or any political subdivision of any of the foregoing.

(Pub. L. 90–321, title VIII, §803, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 875; amended Pub. L. 99–361, July 9, 1986, 100 Stat. 768; Pub. L. 111–203, title X, §1089(2), July 21, 2010, 124 Stat. 2092.)

AMENDMENTS

2010—Par. (1). Pub. L. 111–203 added par. (1) and struck out former par. (1) which read as follows: "The term 'Commission' means the Federal Trade Commission."

1986—Par. (6). Pub. L. 99–361 in provision preceding cl. (A) substituted "clause (F)" for "clause (G)", struck out cl. (F) which excluded any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client from term "debt collector", and redesignated cl. (G) as (F).

EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

### § 1692b. Acquisition of location information

Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall—

(1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;

(2) not state that such consumer owes any debt;

(3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;

(4) not communicate by post card;

(5) not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt; and

(6) after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

(Pub. L. 90–321, title VIII, §804, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 876.)

EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

### § 1692c. Communication in connection with debt collection

#### (a) Communication with the consumer generally

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

(1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location;

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or

(3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits

the consumer from receiving such communication.

**(b) Communication with third parties**

Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

**(c) Ceasing communication**

If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except—

(1) to advise the consumer that the debt collector's further efforts are being terminated;

(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

If such notice from the consumer is made by mail, notification shall be complete upon receipt.

**(d) "Consumer" defined**

For the purpose of this section, the term "consumer" includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator.

(Pub. L. 90–321, title VIII, §805, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 876.)

Effective Date

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

**§ 1692d. Harassment or abuse**

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3)[1] of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

(Pub. L. 90–321, title VIII, §806, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 877.)

References in Text

Section 1681b(3) of this title, referred to in par. (3), was redesignated section 1681b(a)(3) of this title by Pub. L. 104–208, div. A, title II, §2403(a)(1), Sept. 30, 1996, 110 Stat. 3009–430.

Effective Date

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

**§ 1692e. False or misleading representations**

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this subchapter.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information

---

[1] See References in Text note below.

which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title.

(Pub. L. 90–321, title VIII, §807, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 877; amended Pub. L. 104–208, div. A, title II, §2305(a), Sept. 30, 1996, 110 Stat. 3009–425.)

AMENDMENTS

1996—Par. (11). Pub. L. 104–208 amended par. (11) generally. Prior to amendment, par. (11) read as follows: "Except as otherwise provided for communications to acquire location information under section 1692b of this title, the failure to disclose clearly in all communications made to collect a debt or to obtain information about a consumer, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose."

EFFECTIVE DATE OF 1996 AMENDMENT

Pub. L. 104–208, div. A, title II, §2305(b), Sept. 30, 1996, 110 Stat. 3009–425, provided that: "The amendment made by subsection (a) [amending this section] shall take effect 90 days after the date of enactment of this Act [Sept. 30, 1996] and shall apply to all communications made after that date of enactment."

EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

## § 1692f. Unfair practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

(4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B) there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

(Pub. L. 90–321, title VIII, §808, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 879.)

EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

## § 1692g. Validation of debts

### (a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**(b) Disputed debts**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

**(c) Admission of liability**

The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

**(d) Legal pleadings**

A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

**(e) Notice provisions**

The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by title 26, title V of Gramm-Leach-Bliley Act [15 U.S.C. 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

(Pub. L. 90–321, title VIII, §809, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 879; amended Pub. L. 109–351, title VIII, §802, Oct. 13, 2006, 120 Stat. 2006.)

REFERENCES IN TEXT

The Gramm-Leach-Bliley Act, referred to in subsec. (e), is Pub. L. 106–102, Nov. 12, 1999, 113 Stat. 1338. Title V of the Act is classified principally to chapter 94 (§ 6801 et seq.) of this title. For complete classification of this Act to the Code, see Short Title of 1999 Amendment note set out under section 1811 of Title 12, Banks and Banking, and Tables.

AMENDMENTS

2006—Subsec. (b). Pub. L. 109–351, §802(c), inserted at end "Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

Subsec. (d). Pub. L. 109–351, §802(a), added subsec. (d).

Subsec. (e). Pub. L. 109–351, §802(b), added subsec. (e).

EFFECTIVE DATE

Section applicable only with respect to debts for which the initial attempt to collect occurs after the effective date of this subchapter, which takes effect upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

**§ 1692h. Multiple debts**

If any consumer owes multiple debts and makes any single payment to any debt collector with respect to such debts, such debt collector may not apply such payment to any debt which is disputed by the consumer and, where applicable, shall apply such payment in accordance with the consumer's directions.

(Pub. L. 90–321, title VIII, §810, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 880.)

EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

**§ 1692i. Legal actions by debt collectors**

**(a) Venue**

Any debt collector who brings any legal action on a debt against any consumer shall—

(1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or

(2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity—

(A) in which such consumer signed the contract sued upon; or

(B) in which such consumer resides at the commencement of the action.

**(b) Authorization of actions**

Nothing in this subchapter shall be construed to authorize the bringing of legal actions by debt collectors.

(Pub. L. 90–321, title VIII, §811, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 880.)

#### EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

### § 1692j. Furnishing certain deceptive forms

(a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

(b) Any person who violates this section shall be liable to the same extent and in the same manner as a debt collector is liable under section 1692k of this title for failure to comply with a provision of this subchapter.

(Pub. L. 90–321, title VIII, §812, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 880.)

#### EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

### § 1692k. Civil liability

#### (a) Amount of damages

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

#### (b) Factors considered by court

In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors—

(1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or

(2) in any class action under subsection (a)(2)(B), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

#### (c) Intent

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

#### (d) Jurisdiction

An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

#### (e) Advisory opinions of Bureau

No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Bureau, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

(Pub. L. 90–321, title VIII, §813, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 881; amended Pub. L. 111–203, title X, §1089(1), July 21, 2010, 124 Stat. 2092.)

#### AMENDMENTS

2010—Subsec. (e). Pub. L. 111–203 substituted "Bureau" for "Commission".

#### EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

#### EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

### § 1692*l*. Administrative enforcement

#### (a) Federal Trade Commission

The Federal Trade Commission shall be authorized to enforce compliance with this subchapter, except to the extent that enforcement of the requirements imposed under this subchapter is specifically committed to another Government agency under any of paragraphs (1) through (5) of subsection (b), subject to subtitle B of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5511 et seq.]. For purpose of the exercise by the Federal Trade Commission of its functions and powers under the Federal Trade Commission Act (15 U.S.C. 41 et seq.), a violation of this subchapter shall be deemed an un-

fair or deceptive act or practice in violation of that Act. All of the functions and powers of the Federal Trade Commission under the Federal Trade Commission Act are available to the Federal Trade Commission to enforce compliance by any person with this subchapter, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests under the Federal Trade Commission Act, including the power to enforce the provisions of this subchapter, in the same manner as if the violation had been a violation of a Federal Trade Commission trade regulation rule.

**(b) Applicable provisions of law**

Subject to subtitle B of the Consumer Financial Protection Act of 2010, compliance with any requirements imposed under this subchapter shall be enforced under—

(1) section 8 of the Federal Deposit Insurance Act [12 U.S.C. 1818], by the appropriate Federal banking agency, as defined in section 3(q) of the Federal Deposit Insurance Act (12 U.S.C. 1813(q)), with respect to—

(A) national banks, Federal savings associations, and Federal branches and Federal agencies of foreign banks;

(B) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act [12 U.S.C. 601 et seq., 611 et seq.]; and

(C) banks and State savings associations insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System), and insured State branches of foreign banks;

(2) the Federal Credit Union Act [12 U.S.C. 1751 et seq.], by the Administrator of the National Credit Union Administration with respect to any Federal credit union;

(3) subtitle IV of title 49, by the Secretary of Transportation, with respect to all carriers subject to the jurisdiction of the Surface Transportation Board;

(4) part A of subtitle VII of title 49, by the Secretary of Transportation with respect to any air carrier or any foreign air carrier subject to that part;

(5) the Packers and Stockyards Act, 1921 [7 U.S.C. 181 et seq.] (except as provided in section 406 of that Act [7 U.S.C. 226, 227]), by the Secretary of Agriculture with respect to any activities subject to that Act; and

(6) subtitle E of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5561 et seq.], by the Bureau, with respect to any person subject to this subchapter.

The terms used in paragraph (1) that are not defined in this subchapter or otherwise defined in section 3(s) of the Federal Deposit Insurance Act (12 U.S.C. 1813(s)) shall have the meaning given to them in section 1(b) of the International Banking Act of 1978 (12 U.S.C. 3101).

**(c) Agency powers**

For the purpose of the exercise by any agency referred to in subsection (b) of its powers under any Act referred to in that subsection, a violation of any requirement imposed under this subchapter shall be deemed to be a violation of a requirement imposed under that Act. In addition to its powers under any provision of law specifically referred to in subsection (b), each of the agencies referred to in that subsection may exercise, for the purpose of enforcing compliance with any requirement imposed under this subchapter any other authority conferred on it by law, except as provided in subsection (d).

**(d) Rules and regulations**

Except as provided in section 1029(a) of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5519(a)], the Bureau may prescribe rules with respect to the collection of debts by debt collectors, as defined in this subchapter.

(Pub. L. 90–321, title VIII, §814, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 881; amended Pub. L. 98–443, §9(n), Oct. 4, 1984, 98 Stat. 1708; Pub. L. 101–73, title VII, §744(n), Aug. 9, 1989, 103 Stat. 440; Pub. L. 102–242, title II, §212(e), Dec. 19, 1991, 105 Stat. 2301; Pub. L. 102–550, title XVI, §1604(a)(8), Oct. 28, 1992, 106 Stat. 4082; Pub. L. 104–88, title III, §316, Dec. 29, 1995, 109 Stat. 949; Pub. L. 111–203, title X, §1089(3), (4), July 21, 2010, 124 Stat. 2092, 2093.)

REFERENCES IN TEXT

The Consumer Financial Protection Act of 2010, referred to in subsecs. (a) and (b), is title X of Pub. L. 111–203, July 21, 2010, 124 Stat. 1955. Subtitles B (§§1021–1029A) and E (§§1051–1058) of the Act are classified generally to parts B (§5511 et seq.) and E (§5561 et seq., respectively, of subchapter V of chapter 53 of Title 12, Banks and Banking. For complete classification of subtitles B and E to the Code, see Tables.

The Federal Trade Commission Act, referred to in subsec. (a), is act Sept. 26, 1914, ch. 311, 38 Stat. 717, which is classified generally to subchapter I (§41 et seq.) of chapter 2 of this title. For complete classification of this Act to the Code, see section 58 of this title and Tables.

Sections 25 and 25A of the Federal Reserve Act, referred to in subsec. (b)(1)(B), are classified to subchapters I (§601 et seq.) and II (§611 et seq.), respectively, of chapter 6 of Title 12, Banks and Banking.

The Federal Credit Union Act, referred to in subsec. (b)(2), is act June 26, 1934, ch. 750, 48 Stat. 1216, which is classified generally to chapter 14 (§1751 et seq.) of Title 12. For complete classification of this Act to the Code, see section 1751 of Title 12 and Tables.

The Packers and Stockyards Act, 1921, referred to in subsec. (b)(5), is act Aug. 15, 1921, ch. 64, 42 Stat. 159, which is classified generally to chapter 9 (§181 et seq.) of Title 7, Agriculture. For complete classification of this Act to the Code, see section 181 of Title 7 and Tables.

CODIFICATION

In subsec. (b)(3), "subtitle IV of title 49" substituted for "the Acts to regulate commerce" on authority of Pub. L. 95–473, §3(b), Oct. 17, 1978, 92 Stat. 1466, the first section of which enacted subtitle IV of Title 49, Transportation.

In subsec. (b)(4), "part A of subtitle VII of title 49" substituted for "the Federal Aviation Act of 1958 [49 App. U.S.C. 1301 et seq.]" and "that part" substituted for "that Act" on authority of Pub. L. 103–272, §6(b), July 5, 1994, 108 Stat. 1378, the first section of which enacted subtitles II, III, and V to X of Title 49.

Section 1089(4) of Pub. L. 111–203, which directed amendment "in subsection (d)" of the Fair Debt Collection Practices Act, was executed in subsec. (d) of this section, which is section 814 of the Act, to reflect the

probable intent of Congress. See 2010 Amendment note below.

AMENDMENTS

2010—Subsec. (a). Pub. L. 111–203, § 1089(3)(A), added subsec. (a) and struck out former subsec. (a). Prior to amendment, text read as follows: ''Compliance with this subchapter shall be enforced by the Commission, except to the extent that enforcement of the requirements imposed under this subchapter is specifically committed to another agency under subsection (b) of this section. For purpose of the exercise by the Commission of its functions and powers under the Federal Trade Commission Act, a violation of this subchapter shall be deemed an unfair or deceptive act or practice in violation of that Act. All of the functions and powers of the Commission under the Federal Trade Commission Act are available to the Commission to enforce compliance by any person with this subchapter, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests in the Federal Trade Commission Act, including the power to enforce the provisions of this subchapter in the same manner as if the violation had been a violation of a Federal Trade Commission trade regulation rule.''

Subsec. (b). Pub. L. 111–203, § 1089(3)(B)(i), substituted ''Subject to subtitle B of the Consumer Financial Protection Act of 2010, compliance'' for ''Compliance'' in introductory provisions.

Subsec. (b)(1). Pub. L. 111–203, § 1089(3)(B)(ii), added par. (1) and struck out former par. (1) which read as follows: ''section 8 of the Federal Deposit Insurance Act, in the case of—

''(A) national banks, and Federal branches and Federal agencies of foreign banks, by the Office of the Comptroller of the Currency;

''(B) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25(a) of the Federal Reserve Act, by the Board of Governors of the Federal Reserve System; and

''(C) banks insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System) and insured State branches of foreign banks, by the Board of Directors of the Federal Deposit Insurance Corporation;''.

Subsec. (b)(2) to (6). Pub. L. 111–203, § 1089(3)(B)(ii)–(vi), added par. (6), redesignated former pars. (3) to (6) as (2) to (5), respectively, and struck out former par. (2) which read as follows: ''section 8 of the Federal Deposit Insurance Act, by the Director of the Office of Thrift Supervision, in the case of a savings association the deposits of which are insured by the Federal Deposit Insurance Corporation;''.

Subsec. (d). Pub. L. 111–203, § 1089(4), substituted ''Except as provided in section 1029(a) of the Consumer Financial Protection Act of 2010, the Bureau may prescribe rules with respect to the collection of debts by debt collectors, as defined in this subchapter'' for ''Neither the Commission nor any other agency referred to in subsection (b) of this section may promulgate trade regulation rules or other regulations with respect to the collection of debts by debt collectors as defined in this subchapter''. See Codification note above.

1995—Subsec. (b)(4). Pub. L. 104–88 substituted ''Secretary of Transportation, with respect to all carriers subject to the jurisdiction of the Surface Transportation Board'' for ''Interstate Commerce Commission with respect to any common carrier subject to those Acts''.

1992—Subsec. (b)(1)(C). Pub. L. 102–550 substituted semicolon for period at end.

1991—Subsec. (b). Pub. L. 102–242, § 212(e)(2), inserted at end ''The terms used in paragraph (1) that are not defined in this subchapter or otherwise defined in section 3(s) of the Federal Deposit Insurance Act (12 U.S.C. 1813(s)) shall have the meaning given to them in section 1(b) of the International Banking Act of 1978 (12 U.S.C. 3101).''

Pub. L. 102–242, § 212(e)(1), added par. (1) and struck out former par. (1) which read as follows: ''section 8 of Federal Deposit Insurance Act, in the case of—

''(A) national banks, by the Comptroller of the Currency;

''(B) member banks of the Federal Reserve System (other than national banks), by the Federal Reserve Board; and

''(C) banks the deposits or accounts of which are insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System), by the Board of Directors of the Federal Deposit Insurance Corporation;''.

1989—Subsec. (b)(2). Pub. L. 101–73 amended par. (2) generally. Prior to amendment, par. (2) read as follows: ''section 5(d) of the Home Owners Loan Act of 1933, section 407 of the National Housing Act, and sections 6(i) and 17 of the Federal Home Loan Bank Act, by the Federal Home Loan Bank Board (acting directly or through the Federal Savings and Loan Insurance Corporation), in the case of any institution subject to any of those provisions;''.

1984—Subsec. (b)(5). Pub. L. 98–443 substituted ''Secretary of Transportation'' for ''Civil Aeronautics Board''.

EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

EFFECTIVE DATE OF 1995 AMENDMENT

Amendment by Pub. L. 104–88 effective Jan. 1, 1996, see section 2 of Pub. L. 104–88, set out as an Effective Date note under section 1301 of Title 49, Transportation.

EFFECTIVE DATE OF 1992 AMENDMENT

Amendment by Pub. L. 102–550 effective as if included in the Federal Deposit Insurance Corporation Improvement Act of 1991, Pub. L. 102–242, as of Dec. 19, 1991, see section 1609(a) of Pub. L. 102–550, set out as a note under section 191 of Title 12, Banks and Banking.

EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–443 effective Jan. 1, 1985, see section 9(v) of Pub. L. 98–443, set out as a note under section 5314 of Title 5, Government Organization and Employees.

EFFECTIVE DATE

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

TRANSFER OF FUNCTIONS

Functions vested in Administrator of National Credit Union Administration transferred and vested in National Credit Union Administration Board pursuant to section 1752a of Title 12, Banks and Banking.

## § 1692m. Reports to Congress by the Bureau; views of other Federal agencies

(a) Not later than one year after the effective date of this subchapter and at one-year intervals thereafter, the Bureau shall make reports to the Congress concerning the administration of its functions under this subchapter, including such recommendations as the Bureau deems necessary or appropriate. In addition, each report of the Bureau shall include its assessment of the extent to which compliance with this sub-

chapter is being achieved and a summary of the enforcement actions taken by the Bureau under section 1692*l* of this title.

(b) In the exercise of its functions under this subchapter, the Bureau may obtain upon request the views of any other Federal agency which exercises enforcement functions under section 1692*l* of this title.

(Pub. L. 90–321, title VIII, §815, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 882; amended Pub. L. 111–203, title X, §1089(1), July 21, 2010, 124 Stat. 2092.)

References in Text

The effective date of this subchapter, referred to in subsec. (a), is the date occurring on expiration of six months after Sept. 20, 1977. See section 819 of Pub. L. 90–321, set out as an Effective Date note under section 1692 of this title.

Amendments

2010—Pub. L. 111–203 substituted ''Bureau'' for ''Commission'' wherever appearing.

Effective Date of 2010 Amendment

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

Effective Date

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

§ 1692n. Relation to State laws

This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.

(Pub. L. 90–321, title VIII, §816, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 883.)

Effective Date

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

§ 1692o. Exemption for State regulation

The Bureau shall by regulation exempt from the requirements of this subchapter any class of debt collection practices within any State if the Bureau determines that under the law of that State that class of debt collection practices is subject to requirements substantially similar to those imposed by this subchapter, and that there is adequate provision for enforcement.

(Pub. L. 90–321, title VIII, §817, as added Pub. L. 95–109, Sept. 20, 1977, 91 Stat. 883; amended Pub. L. 111–203, title X, §1089(1), July 21, 2010, 124 Stat. 2092.)

Amendments

2010—Pub. L. 111–203 substituted ''Bureau'' for ''Commission'' in two places.

Effective Date of 2010 Amendment

Amendment by Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

Effective Date

Section effective upon the expiration of six months after Sept. 20, 1977, see section 819 of Pub. L. 90–321, as added by Pub. L. 95–109, set out as a note under section 1692 of this title.

§ 1692p. Exception for certain bad check enforcement programs operated by private entities

(a) In general

(1) Treatment of certain private entities

Subject to paragraph (2), a private entity shall be excluded from the definition of a debt collector, pursuant to the exception provided in section 1692a(6) of this title, with respect to the operation by the entity of a program described in paragraph (2)(A) under a contract described in paragraph (2)(B).

(2) Conditions of applicability

Paragraph (1) shall apply if—

(A) a State or district attorney establishes, within the jurisdiction of such State or district attorney and with respect to alleged bad check violations that do not involve a check described in subsection (b), a pretrial diversion program for alleged bad check offenders who agree to participate voluntarily in such program to avoid criminal prosecution;

(B) a private entity, that is subject to an administrative support services contract with a State or district attorney and operates under the direction, supervision, and control of such State or district attorney, operates the pretrial diversion program described in subparagraph (A); and

(C) in the course of performing duties delegated to it by a State or district attorney under the contract, the private entity referred to in subparagraph (B)—

(i) complies with the penal laws of the State;

(ii) conforms with the terms of the contract and directives of the State or district attorney;

(iii) does not exercise independent prosecutorial discretion;

(iv) contacts any alleged offender referred to in subparagraph (A) for purposes of participating in a program referred to in such paragraph—

(I) only as a result of any determination by the State or district attorney that probable cause of a bad check violation under State penal law exists, and that contact with the alleged offender for purposes of participation in the program is appropriate; and

(II) the alleged offender has failed to pay the bad check after demand for payment, pursuant to State law, is made for payment of the check amount;

(v) includes as part of an initial written communication with an alleged offender a clear and conspicuous statement that—

(I) the alleged offender may dispute the validity of any alleged bad check violation;

(II) where the alleged offender knows, or has reasonable cause to believe, that the alleged bad check violation is the result of theft or forgery of the check, identity theft, or other fraud that is not the result of the conduct of the alleged offender, the alleged offender may file a crime report with the appropriate law enforcement agency; and

(III) if the alleged offender notifies the private entity or the district attorney in writing, not later than 30 days after being contacted for the first time pursuant to clause (iv), that there is a dispute pursuant to this subsection, before further restitution efforts are pursued, the district attorney or an employee of the district attorney authorized to make such a determination makes a determination that there is probable cause to believe that a crime has been committed; and

(vi) charges only fees in connection with services under the contract that have been authorized by the contract with the State or district attorney.

**(b) Certain checks excluded**

A check is described in this subsection if the check involves, or is subsequently found to involve—

(1) a postdated check presented in connection with a payday loan, or other similar transaction, where the payee of the check knew that the issuer had insufficient funds at the time the check was made, drawn, or delivered;

(2) a stop payment order where the issuer acted in good faith and with reasonable cause in stopping payment on the check;

(3) a check dishonored because of an adjustment to the issuer's account by the financial institution holding such account without providing notice to the person at the time the check was made, drawn, or delivered;

(4) a check for partial payment of a debt where the payee had previously accepted partial payment for such debt;

(5) a check issued by a person who was not competent, or was not of legal age, to enter into a legal contractual obligation at the time the check was made, drawn, or delivered; or

(6) a check issued to pay an obligation arising from a transaction that was illegal in the jurisdiction of the State or district attorney at the time the check was made, drawn, or delivered.

**(c) Definitions**

For purposes of this section, the following definitions shall apply:

**(1) State or district attorney**

The term "State or district attorney" means the chief elected or appointed prosecuting attorney in a district, county (as defined in section 2 of title 1), municipality, or comparable jurisdiction, including State attorneys general who act as chief elected or appointed prosecuting attorneys in a district, county (as so defined), municipality or comparable jurisdiction, who may be referred to by a variety of titles such as district attorneys, prosecuting attorneys, commonwealth's attorneys, solicitors, county attorneys, and state's attorneys, and who are responsible for the prosecution of State crimes and violations of jurisdiction-specific local ordinances.

**(2) Check**

The term "check" has the same meaning as in section 5002(6) of title 12.

**(3) Bad check violation**

The term "bad check violation" means a violation of the applicable State criminal law relating to the writing of dishonored checks.

(Pub. L. 90–321, title VIII, §818, as added Pub. L. 109–351, title VIII, §801(a)(2), Oct. 13, 2006, 120 Stat. 2004.)

SUBCHAPTER VI—ELECTRONIC FUND TRANSFERS

**§ 1693. Congressional findings and declaration of purpose**

**(a) Rights and liabilities undefined**

The Congress finds that the use of electronic systems to transfer funds provides the potential for substantial benefits to consumers. However, due to the unique characteristics of such systems, the application of existing consumer protection legislation is unclear, leaving the rights and liabilities of consumers, financial institutions, and intermediaries in electronic fund transfers undefined.

**(b) Purposes**

It is the purpose of this subchapter to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights.

(Pub. L. 90–321, title IX, §902, as added Pub. L. 95–630, title XX, §2001, Nov. 10, 1978, 92 Stat. 3728; amended Pub. L. 111–203, title X, §1073(a)(1), July 21, 2010, 124 Stat. 2060.)

AMENDMENTS

2010—Subsec. (b). Pub. L. 111–203 inserted "and remittance" after "electronic fund".

EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective 1 day after July 21, 2010, except as otherwise provided, see section 4 of Pub. L. 111–203, set out as an Effective Date note under section 5301 of Title 12, Banks and Banking.

EFFECTIVE DATE

Pub. L. 90–321, title IX, §923, formerly §921, as added by Pub. L. 95–630, title XX, §2001, Nov. 10, 1978, 92 Stat. 3741, renumbered §922, Pub. L. 111–24, title IV, §401(1), May 22, 2009, 123 Stat. 1751; renumbered §923, Pub. L. 111–203, title X, §1073(a)(3), July 21, 2010, 124 Stat. 2060, provided that: "This title [enacting this subchapter] takes effect upon the expiration of eighteen months

## ATTACHMENT B

12 C.F.R. §1022.42. Reasonable policies and procedures concerning the accuracy and integrity of furnished information.

(a)     Policies and procedures. Each furnisher must establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnishes to a consumer reporting agency. The policies and procedures must be appropriate to the nature, size, complexity, and scope of each furnisher's activities.

(b)     Guidelines. Each furnisher must consider the guidelines in appendix E of this part in developing its policies and procedures required by this section, and incorporate those guidelines that are appropriate.

(c)     Reviewing and updating policies and procedures. Each furnisher must review its policies and procedures required by this section periodically and update them as necessary to ensure their continued effectiveness.

**ATTACHMENT C**

Appendix E to Part 1022—Interagency Guidelines Concerning the Accuracy and Integrity of Information Furnished to Consumer Reporting Agencies

The Bureau encourages voluntary furnishing of information to consumer reporting agencies. Section 1022.42 of this part requires each furnisher to establish and implement reasonable written policies and procedures concerning the accuracy and integrity of the information it furnishes to consumer reporting agencies. Under §1022.42(b) of this part, a furnisher must consider the guidelines set forth below in developing its policies and procedures. In establishing these policies and procedures, a furnisher may include any of its existing policies and procedures that are relevant and appropriate. Section 1022.42(c) requires each furnisher to review its policies and procedures periodically and update them as necessary to ensure their continued effectiveness.

I.    Nature, Scope, and Objectives of Policies and Procedures

(a)    Nature and Scope. Section 1022.42(a) of this part requires that a furnisher's policies and procedures be appropriate to the nature, size, complexity, and scope of the furnisher's activities. In developing its policies and procedures, a furnisher should consider, for example:

(1)    The types of business activities in which the furnisher engages;

(2)    The nature and frequency of the information the furnisher provides to consumer reporting agencies; and

(3)    The technology used by the furnisher to furnish information to consumer reporting agencies.

(b)    Objectives. A furnisher's policies and procedures should be reasonably designed to promote the following objectives:

(1)    To furnish information about accounts or other relationships with a consumer that is accurate, such that the furnished information:

(i)    Identifies the appropriate consumer;

(ii)    Reflects the terms of and liability for those accounts or other relationships; and

(iii)    Reflects the consumer's performance and other conduct with respect to the account or other relationship;

(2)    To furnish information about accounts or other relationships with a consumer that has integrity, such that the furnished information:

       (i)      Is substantiated by the furnisher's records at the time it is furnished;

       (ii)     Is furnished in a form and manner that is designed to minimize the likelihood that the information may be incorrectly reflected in a consumer report; thus, the furnished information should:

            (A)     Include appropriate identifying information about the consumer to whom it pertains; and

            (B)     Be furnished in a standardized and clearly understandable form and manner and with a date specifying the time period to which the information pertains; and

       (iii)    Includes the credit limit, if applicable and in the furnisher's possession;

    (3)     To conduct reasonable investigations of consumer disputes and take appropriate actions based on the outcome of such investigations; and

    (4)     To update the information it furnishes as necessary to reflect the current status of the consumer's account or other relationship, including, for example:

       (i)      Any transfer of an account (e.g., by sale or assignment for collection) to a third party; and

       (ii)     Any cure of the consumer's failure to abide by the terms of the account or other relationship.

II.    Establishing and Implementing Policies and Procedures

In establishing and implementing its policies and procedures, a furnisher should:

(a)     Identify practices or activities of the furnisher that can compromise the accuracy or integrity of information furnished to consumer reporting agencies, such as by:

    (1)     Reviewing its existing practices and activities, including the technological means and other methods it uses to furnish information to consumer reporting agencies and the frequency and timing of its furnishing of information;

    (2)     Reviewing its historical records relating to accuracy or integrity or to disputes; reviewing other information relating to the accuracy or integrity of information provided by the furnisher to consumer reporting agencies; and considering the types of errors, omissions, or other problems that may have affected the accuracy or integrity of information it has furnished about consumers to consumer reporting agencies;

(3)     Considering any feedback received from consumer reporting agencies, consumers, or other appropriate parties;

(4)     Obtaining feedback from the furnisher's staff; and

(5)     Considering the potential impact of the furnisher's policies and procedures on consumers.

(b)     Evaluate the effectiveness of existing policies and procedures of the furnisher regarding the accuracy and integrity of information furnished to consumer reporting agencies; consider whether new, additional, or different policies and procedures are necessary; and consider whether implementation of existing policies and procedures should be modified to enhance the accuracy and integrity of information about consumers furnished to consumer reporting agencies.

(c)     Evaluate the effectiveness of specific methods (including technological means) the furnisher uses to provide information to consumer reporting agencies; how those methods may affect the accuracy and integrity of the information it provides to consumer reporting agencies; and whether new, additional, or different methods (including technological means) should be used to provide information to consumer reporting agencies to enhance the accuracy and integrity of that information.

III.     Specific Components of Policies and Procedures

In developing its policies and procedures, a furnisher should address the following, as appropriate:

(a)     Establishing and implementing a system for furnishing information about consumers to consumer reporting agencies that is appropriate to the nature, size, complexity, and scope of the furnisher's business operations.

(b)     Using standard data reporting formats and standard procedures for compiling and furnishing data, where feasible, such as the electronic transmission of information about consumers to consumer reporting agencies.

(c)     Maintaining records for a reasonable period of time, not less than any applicable recordkeeping requirement, in order to substantiate the accuracy of any information about consumers it furnishes that is subject to a direct dispute.

(d)     Establishing and implementing appropriate internal controls regarding the accuracy and integrity of information about consumers furnished to consumer reporting agencies, such as by implementing standard procedures and verifying random samples of information provided to consumer reporting agencies.

(e)    Training staff that participates in activities related to the furnishing of information about consumers to consumer reporting agencies to implement the policies and procedures.

(f)    Providing for appropriate and effective oversight of relevant service providers whose activities may affect the accuracy or integrity of information about consumers furnished to consumer reporting agencies to ensure compliance with the policies and procedures.

(g)    Furnishing information about consumers to consumer reporting agencies following mergers, portfolio acquisitions or sales, or other acquisitions or transfers of accounts or other obligations in a manner that prevents re-aging of information, duplicative reporting, or other problems that may similarly affect the accuracy or integrity of the information furnished.

(h)    Deleting, updating, and correcting information in the furnisher's records, as appropriate, to avoid furnishing inaccurate information.

(i)    Conducting reasonable investigations of disputes.

(j)    Designing technological and other means of communication with consumer reporting agencies to prevent duplicative reporting of accounts, erroneous association of information with the wrong consumer(s), and other occurrences that may compromise the accuracy or integrity of information provided to consumer reporting agencies.

(k)    Providing consumer reporting agencies with sufficient identifying information in the furnisher's possession about each consumer about whom information is furnished to enable the consumer reporting agency properly to identify the consumer.

(l)    Conducting a periodic evaluation of its own practices, consumer reporting agency practices of which the furnisher is aware, investigations of disputed information, corrections of inaccurate information, means of communication, and other factors that may affect the accuracy or integrity of information furnished to consumer reporting agencies.

(m)    Complying with applicable requirements under the FCRA and its implementing regulations.

## ATTACHMENT D

12 CFR §1022.43   Direct disputes.

(a)     *General rule.* Except as otherwise provided in this section, a furnisher must conduct a reasonable investigation of a direct dispute if it relates to:

(1)     The consumer's liability for a credit account or other debt with the furnisher, such as direct disputes relating to whether there is or has been identity theft or fraud against the consumer, whether there is individual or joint liability on an account, or whether the consumer is an authorized user of a credit account;

(2)     The terms of a credit account or other debt with the furnisher, such as direct disputes relating to the type of account, principal balance, scheduled payment amount on an account, or the amount of the credit limit on an open-end account;

(3)     The consumer's performance or other conduct concerning an account or other relationship with the furnisher, such as direct disputes relating to the current payment status, high balance, date a payment was made, the amount of a payment made, or the date an account was opened or closed; or

(4)     Any other information contained in a consumer report regarding an account or other relationship with the furnisher that bears on the consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living.

(b)     *Exceptions.* The requirements of paragraph (a) of this section do not apply to a furnisher if:

(1)     The direct dispute relates to:

(i)     The consumer's identifying information (other than a direct dispute relating to a consumer's liability for a credit account or other debt with the furnisher, as provided in paragraph (a)(1) of this section) such as name(s), date of birth, Social Security number, telephone number(s), or address(es);

(ii)     The identity of past or present employers;

(iii)     Inquiries or requests for a consumer report;

(iv)     Information derived from public records, such as judgments, bankruptcies, liens, and other legal matters (unless provided by a furnisher with an account or other relationship with the consumer);

(v)     Information related to fraud alerts or active duty alerts; or

          (vi)     Information provided to a consumer reporting agency by another furnisher; or

        (2)     The furnisher has a reasonable belief that the direct dispute is submitted by, is prepared on behalf of the consumer by, or is submitted on a form supplied to the consumer by, a credit repair organization, as defined in 15 U.S.C. 1679a(3), or an entity that would be a credit repair organization, but for 15 U.S.C. 1679a(3)(B)(i).

    (c)     *Direct dispute address.* A furnisher is required to investigate a direct dispute only if a consumer submits a dispute notice to the furnisher at:

        (1)     The address of a furnisher provided by a furnisher and set forth on a consumer report relating to the consumer;

        (2)     An address clearly and conspicuously specified by the furnisher for submitting direct disputes that is provided to the consumer in writing or electronically (if the consumer has agreed to the electronic delivery of information from the furnisher); or

        (3)     Any business address of the furnisher if the furnisher has not so specified and provided an address for submitting direct disputes under paragraphs (c)(1) or (2) of this section.

    (d)     *Direct dispute notice contents.* A dispute notice must include:

        (1)     Sufficient information to identify the account or other relationship that is in dispute, such as an account number and the name, address, and telephone number of the consumer, if applicable;

        (2)     The specific information that the consumer is disputing and an explanation of the basis for the dispute; and

        (3)     All supporting documentation or other information reasonably required by the furnisher to substantiate the basis of the dispute. This documentation may include, for example: a copy of the relevant portion of the consumer report that contains the allegedly inaccurate information; a police report; a fraud or identity theft affidavit; a court order; or account statements.

    (e)     *Duty of furnisher after receiving a direct dispute notice.* After receiving a dispute notice from a consumer pursuant to paragraphs (c) and (d) of this section, the furnisher must:

        (1)     Conduct a reasonable investigation with respect to the disputed information;

        (2)     Review all relevant information provided by the consumer with the dispute notice;

(3)     Complete its investigation of the dispute and report the results of the investigation to the consumer before the expiration of the period under section 611(a)(1) of the FCRA (15 U.S.C. 1681i(a)(1)) within which a consumer reporting agency would be required to complete its action if the consumer had elected to dispute the information under that section; and

(4)     If the investigation finds that the information reported was inaccurate, promptly notify each consumer reporting agency to which the furnisher provided inaccurate information of that determination and provide to the consumer reporting agency any correction to that information that is necessary to make the information provided by the furnisher accurate.

(f)     *Frivolous or irrelevant disputes.*

(1)     A furnisher is not required to investigate a direct dispute if the furnisher has reasonably determined that the dispute is frivolous or irrelevant. A dispute qualifies as frivolous or irrelevant if:

(i)     The consumer did not provide sufficient information to investigate the disputed information as required by paragraph (d) of this section;

(ii)     The direct dispute is substantially the same as a dispute previously submitted by or on behalf of the consumer, either directly to the furnisher or through a consumer reporting agency, with respect to which the furnisher has already satisfied the applicable requirements of the Act or this section; provided, however, that a direct dispute is not substantially the same as a dispute previously submitted if the dispute includes information listed in paragraph (d) of this section that had not previously been provided to the furnisher; or

(iii)     The furnisher is not required to investigate the direct dispute because one or more of the exceptions listed in paragraph (b) of this section applies.

(2)     *Notice of determination.* Upon making a determination that a dispute is frivolous or irrelevant, the furnisher must notify the consumer of the determination not later than five business days after making the determination, by mail or, if authorized by the consumer for that purpose, by any other means available to the furnisher.

(3)     *Contents of notice of determination that a dispute is frivolous or irrelevant.* A notice of determination that a dispute is frivolous or irrelevant must include the reasons for such determination and identify any information required to investigate the disputed information, which notice may consist of a standardized form describing the general nature of such information.

## <u>ATTACHMENT E</u>

15 U.S.C. § 1681i(a)(1) Reinvestigations of Disputed Information

(1) Reinvestigation Required

     (A)    In general.  Subject to subsection (f), and except as provided in subsection (g) if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

     (B)    Extension of period to reinvestigate.  Except as provided in subparagraph (c), the 30-day period described in subparagraph (A) may be extended for not more than 15 additional days if the consumer reporting agency receives information from the consumer during that 30-day period that is relevant to the reinvestigation.

     (C)    Limitations on extension of period to reinvestigate.  Subparagraph (B) shall not apply to any reinvestigation in which, during the 30-day period described in subparagraph (A), the information that is the subject of the reinvestigation is found to be inaccurate or incomplete or the consumer reporting agency determines that the information cannot be verified.